FORREST AND MARGARET REED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reed v. Commissioner
Docket No. 15966-90
United States Tax Court
T.C. Memo 1994-611; 1994 Tax Ct. Memo LEXIS 618; 68 T.C.M. (CCH) 1429; December 14, 1994, Filed *618 Decision will be entered under Rule 155. Forrest Reed and Margaret Reed, pro sese. For respondent: Mark A. Weiner. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax for the calendar years 1985 and 1986 in the amounts as follows: Additions to Tax Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1985
$ 10,470
$ 524
[1]
$ 2,618
Additions to Tax Year
Deficiency
Sec. 6653(B)(1)(a)
Sec. 6653(B)(1)(b)
Sec. 6661
1986
$ 9,787
$ 7,340
[1]
$ 2,447
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The parties have disposed of all issues with respect to the year 1986 by agreement and have disposed of all issues for the year 1985 by agreement, except: (1) Whether an amount of $ 30,000 received by petitioner, Forrest Reed, in 1985 from the owner of a company for which he sold insurance *619 represents loan proceeds or taxable income; (2) whether petitioners are liable for the addition to tax for negligence for the year 1985; and (3) whether petitioners are liable for the addition to tax for substantial understatement of tax for the year 1985. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Canoga Park, California, at the time of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1985. During the year 1985, Forrest Reed (petitioner) operated a business on Ventura Blvd. in Woodland Hills, California, which was engaged primarily in the sale of insurance and investment products. As a part of this business, petitioner sold insurance and investment products on behalf of Financial Independence Corp. (FIC), and his office in Woodland Hills served as a satellite office for FIC. Mr. Ray L. Waid (Mr. Waid) was the owner of FIC which he operated out of an office in Rancho Cucamonga, California. The product sold by petitioner on behalf of FIC was a combination of mortgage insurance and a separate investment fund. The premiums on the mortgage *620 insurance sold by petitioner on behalf of FIC did not decrease as the mortgage decreased, and the additional premium over that necessary to carry the insurance to cover the amount due on the mortgage was to be placed in a separate investment fund for the person who had purchased the insurance, and at a later date might be used to pay the mortgage for that person's property in full. Petitioner was compensated for the sales he made on behalf of FIC by a commission received from that corporation of 2 percent of the premiums paid that went into the client's investment fund. When petitioner and Mr. Waid first discussed petitioner's selling insurance on behalf of FIC, the arrangement between them was that petitioner would receive a 25 percent interest in FIC for opening an office in the West San Fernando Valley to promote and sell the products offered by FIC. However, before petitioner commenced selling the insurance and investment product for FIC, the arrangement was changed to a 2-percent-commission basis. Petitioner did open the Woodland Hills office. Mr. Waid told petitioner that he did not have credit sufficient to open an office in the San Fernando Valley. About the end of 1984, *621 petitioner had expended most of the cash he had available to open and operate the Woodland Hills office, and discussed that situation with Mr. Waid. As a result of the discussion, under date of November 27, 1984, both petitioners signed a document which stated as follows: This is to certify that Mr. Ray L. Waid is loaning Mr. Forrest A. Reed the sum of $ 20,000 (Twenty Thousand) over a 4 (Four) Month period beginning December 1, 1984. Mr. Waid will loan $ 5,000 (Five Thousand) per month for the afore-mentioned period at no interest. This loan will be repaid when the real estate at 23751 Hartland is sold per Ms. Margie Korb.
Ms. Margie Korb is now Mrs. Margaret Reed, one of the petitioners in this case. No amount was given by Mr. Waid to petitioner in 1984, but on January 1, 1985, Mr. Waid gave petitioner a $ 5,000 check which was marked in the space at the bottom to indicate the purpose of the check as "loan". A similar check for $ 5,000 was given by Mr. Waid to petitioner in each of the months February, March, and April. Petitioner deposited these checks in the bank account which he used for both business and personal purposes. Petitioner kept no books or records *622 other than this bank account and some receipts. After receipt of the four monthly checks for $ 5,000 each, petitioner told Mr. Waid that his receipts from his FIC sales had not become sufficient to enable him to run the Woodland Hills office and pay all of the expenses of that office from business receipts, and, therefore, he needed additional funds. In May 1985, Mr. Waid gave petitioner another $ 5,000 check which was likewise marked "loan". In June 1985, Mr. Waid gave petitioner another $ 5,000 check, but this check had no notation as to its purpose. Both these additional checks were deposited into the one bank account which served both as a personal and business account for petitioner. The proceeds of these checks were used by petitioner primarily to pay expenses related to the operation of the Woodland Hills office, which expenses were deducted by petitioners on the Schedule C which was a part of petitioners' 1985 Federal income tax return. Mr. Waid did not ask for or receive any collateral as security for the $ 30,000 payments to petitioner, and no interest was to be charged with respect to the $ 30,000. Petitioners at the date of the trial had never made any repayment *623 to Mr. Waid on the $ 30,000 received from him. Petitioners on Schedule C of their 1985 Federal income tax return, "Profit or (Loss) from Business or Profession", showed Forrest A. Reed, Jr., as the sole proprietor of a business, the products or services of which were stated to be "Ins and Financial Pl-Service". The address of the business was stated to be in Woodland Hills. The name of the business was shown as Forrest A. Reed, Jr. On this Schedule C, the gross receipts or sales were reported as $ 87,647. Most of these receipts were from commissions from FIC. In the latter part of 1985, FIC did not pay the commissions due to petitioner when they became due. Petitioner took up with Mr. Waid his failure to make timely payments, and in November petitioner was paid the commissions due to him through October 1985. Petitioner never received the commissions due to him for November and December 1985. Mr. Waid never discussed with petitioner repayment of the $ 30,000, nor did he discuss with petitioner crediting the commissions due to petitioner which remained unpaid against the $ 30,000. Toward the end of 1985, petitioner reported to the California attorney general's office and to *624 the insurance commissioner of California that he suspected Mr. Waid of improper activities. He also made the same report to the California Department of Corporations. An investigation into Mr. Waid's affairs was started by California authorities, and in late 1985, Mr. Waid was indicted for a crime with respect to his participation in the sales of FIC insurance and investment products. When petitioner reported Mr. Waid's actions to the California authorities, he did not state that he owed any money to Mr. Waid. Petitioners at the date of the trial of this case had not sold the property at 23751 Hartland, which was their personal residence. Petitioners had no commitment to sell the property and did not know when, if ever, they would sell this residence. [1]
After *625 approximately the first of November 1985, petitioner did not know the whereabouts of Mr. Waid and was unable to get in touch with him. Petitioners testified at Mr. Waid's trial and did see him at that time, but at the time of the trial of this case, petitioners did not know how to get in touch with Mr. Waid or where he was. Petitioners never made any offer of payment of any portion of the $ 30,000 to Mr. Waid at any time. Respondent in the notice of deficiency made increases in petitioners' 1985 receipts and decreases in the deductions claimed for expenses. As a part of the agreement of the parties, petitioners conceded a portion of the increase and a portion of the disallowance of deductions for expenses. On their 1985 Federal income tax return, petitioners did not include in income any portion of the $ 30,000 represented by checks received from Mr. Waid. This $ 30,000 was a part of the increase made by respondent in the gross receipts of petitioner for the year 1985 determined by respondent in the notice of deficiency. Petitioners take the position that the $ 30,000 was improperly included in their gross receipts since the $ 30,000 was a bona fide loan. OPINION Section 61 *626 provides that gross income includes all income from whatever source derived. Since the amount must be income, a bona fide loan which must be repaid does not constitute income. . However, whether an amount received by a taxpayer constitutes a loan or income is a question of fact to be determined from consideration of the record as a whole. . For an advance to constitute a bona fide loan there must exist a good-faith intent on the part of the recipient of the funds to make repayment, and a good faith intent on the part of the person advancing the funds to enforce repayment. . If there is no debtor-creditor relationship created at the time advances are made, such advances do not constitute loans. . In considering whether advances are loans, the surrounding facts and not merely the conclusion of one party must be used to determine intent. In , *627 we pointed out some of the factors to be considered in determining whether an advance is a loan. These factors included whether a note or other evidence of indebtedness existed, whether there was any written loan agreement, whether there was a fixed schedule for repayment, whether any security or collateral was requested, whether interest was charged, whether a demand for repayment had been made, whether the parties' records, if any, reflect the transaction as a loan, whether any repayments have been made, and whether the borrower was solvent at the time of the loan. However, these factors are merely factors indicating intent, and the ultimate issue is the intent of the borrower to repay and the intent of the lender to enforce repayment. Here, we have no testimony from the lender. However, the fact that the lender had never asked for repayment, and that the only indication of a loan was the notation on the check, and the statement signed by petitioners on November 27, 1984, stating that there would be a repayment when petitioners sold their house, shows that there was not a fixed payment date and that the time for repayment might never come. Petitioner stated that he did not *628 think that he was obligated to make any repayment until petitioners sold their home and that they were under no obligation to sell the house. This in itself indicates repayment might never occur. Further indications that no repayment was intended is that when Mr. Waid was failing to pay the percentage commissions due petitioner, he made no effort to offset those commissions against the $ 30,000 and has never made any attempt to collect from petitioner or even mention to petitioner that the amount was due him. Furthermore, the lack of any intention on petitioners part to repay is evidenced by their failure to even keep up with the address of Mr. Waid. Petitioner was even equivocal in his testimony about whether he was intending to make any repayment on the $ 30,000, suggesting that perhaps by the trial date the advances were no longer loans. However, in 1985 at the time the $ 30,000 payment was made to petitioner, there was no agreement that petitioner repay, other than the statement set forth in the November 27, 1984, document signed by petitioners. This statement referred only to $ 20,000 and it was clear that petitioners were not obligated to repay until they sold their home. *629 Petitioners were never required to sell the home, but could keep it until their death. In such event, they never had an obligation to repay the $ 30,000. This is far too indefinite to constitute any agreement to repay. Also, none of the other factors suggesting a loan are present here. There was no collateral, there was no promissory note given, there was no fixed schedule of repayments, there was no interest charged, there was no record reflecting the $ 30,000 as a loan, there has never been any repayment made, and no demand for payment, or offer to pay, has been made. Based on all the facts in this record, we conclude that the petitioners have totally failed to establish that there was any intent on the part of the lender to collect the amount or intent on petitioners' part to repay. Therefore, petitioners have failed to establish that the amount was a loan. Since the amount was not a loan, it is income to petitioner since there is no suggestion in this record that if the $ 30,000 payment to petitioner was not a bona fide loan, it would not be income. Because of the relationship between petitioner and Mr. Waid, and the fact that the $ 30,000 was paid to be used to pay expenses *630 of an office used for petitioner's sales for FIC, indicate that the $ 30,000 was income to petitioner. Petitioners deducted on their 1985 income tax return the office expenses paid with the $ 30,000. Section 6653(a)(1) and (2) imposes an addition to tax for negligence or intentional disregard of rules or regulations and additional interest on that portion of the deficiency due to negligence. Negligence has been defined as encompassing a failure to make a reasonable attempt to comply with the Internal Revenue Code, a lack of due care, or the failure to do that which a reasonably prudent person would do under similar circumstances. , affg. ; , and cases there cited. When, as here, respondent has determined the addition to tax and increased interest in the notice of deficiency, petitioners bear the burden of proving that they were not negligent. , affg. . *631 This record shows that petitioners kept no regular books of account. Petitioners used their personal checking account for deposit of both personal amounts received and business amounts received. They made no notation as to what the amounts deposited represented. Petitioners have not shown due care in ascertaining whether the amounts of the $ 5,000 payments received from Mr. Waid were, in fact, income or were properly a loan. Not only have petitioners failed to show that the entire deficiency which will result from the agreement of the parties and our determination in this case was not due to negligence, but also the record affirmatively shows negligence on the part of petitioners in the failure to keep proper books and records and to properly report items of income and deductions. Based on this record, we sustain respondent's determination of the addition to tax and additional interest under section 6653(a)(1) and (2) on the entire deficiency to be redetermined under Rule 155 in this case. Petitioner has made no argument whatsoever with respect to the addition to tax for substantial understatement of tax under section 6661(a). Under section 6661 an understatement of tax is *632 substantial if for the taxable year such understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. If, when a recomputation of tax for the year here in issue is made under Rule 155, there results an amount sufficient to be a substantial understatement of tax under section 6661, we sustain respondent's determination since petitioner has failed to make any showing of error in that determination. Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on $ 10,470.↩
1. 50 percent of the interest due on $ 9,787.↩
1. Petitioners in their brief made some reference with respect to activity concerning property in February 1994, a month after the trial of this case was concluded. No consideration has been given to this statement, since it is not part of the record.↩